## Baugh's Executors, Appellants, v. White.

[Marked to be reported.]

*Contract—Construction of—Affidavit of defence.*

The owner of a tannery also owned a number of timber tracts adjoining the land upon which the tannery was situated. He agreed to sell to defendants the tannery and the tract of land upon which it was situated, together with a railroad siding, track, scales, tenement houses and bark shed. The agreement provided: "All bark is to be sold to the party of the second part at the cost price thereof." Defendants subsequently accepted a deed for the land, and took possession of it, and the bark thereon. In an action to recover the price of the bark, defendants claimed that they were entitled to all the bark on plaintiff's adjoining tracts, and that they were willing to pay the sum claimed " on conveyance to them by the plaintiffs of the bark on the lands aforesaid at the cost price thereof." *Held*, (1) that the contract did not include any other bark than such as had already been peeled, and was then on the premises sold; and (2) that plaintiff was entitled to judgment for want of a sufficient affidavit of defence.

*Written contract—Parol evidence—To vary.*

In such a case an averment in the affidavit of defence that it was understood that all of the bark of the plaintiff was included in the agreement, is insufficient to vary the terms of the written agreement, no fraud, accident or mistake being alleged.

Argued May 8, 1894.  Appeal, No. 15, Jan. T., 1894, by plaintiffs, Margaret Baugh et al., executors of Samuel Baugh, deceased, from order of C. P. Bedford Co., April T., 1893, No. 116, striking off judgment against defendants, J. K. & G. B. White. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Rule to strike off judgment.

From the record it appeared that in 1892 Samuel Baugh was the owner of a tannery in Bedford county, and also of a number of tracts of timber land adjoining.  The tannery tract consisted of twelve acres of land.  On Aug. 18, 1892, Baugh sold defendants the tannery tract by an agreement in writing under seal which was in part as follows :

" This agreement made August 18, 1892, between Samuel Baugh, of the city of Philadelphia, of the first part, and John K. White and George B. White, trading as J. K. & G. B. White, of the second part : Witnesseth that the said party of the first part, for the consideration hereinafter mentioned, doth hereby, for himself, his heirs, executors and administrators, covenant, promise and agree with the said parties of the second part, their heirs and assigns, that he the said party of the first part, shall and will on or before                    at the proper cost and charges of the said parties of the second part, their heirs and assigns, by a good and sufficient deed of conveyance, grant, convey, and assure unto the said parties of the second part, their heirs and assigns, all that certain tract of land of about twelve acres known as Mann's Choice Tannery, situate in the borough of Mann's Choice, Bedford county, Pa., with the railroad siding, track, scales, tenement houses and appurtenances, gravel pit, bark shed and scales, and Madley bark shed and scales, excepting and reserving unto the party of the first part all the leather now on said premises.  All bark is to be sold to the party of the second part at the cost price thereof.  Together with all and singular the buildings and other improvements," etc.

Defendant subsequently accepted a deed for the tannery tract, and took possession of it, and the bark thereon.  Plaintiffs brought suit for the bark, claiming $15,979.  Defendants filed an affidavit of defence which was as follows :

" John K. White, one of the above named defendants, being duly sworn, says that he and his codefendant have a just and full defence to the whole of the plaintiffs' claim in the above stated action except the amount of $13,253.82, for which they tender judgment in this action, and upon its acceptance they will demand in further performance of plaintiffs' contract, that he convey all the bark belonging to plaintiffs, at the making of the contract upon his lands in Bedford county, upon payment of the cost price therefor as bargained for and sold by plaintiffs to defendants, under the terms of the contract of August 18, 1892.

" And as for a defence to any part of plaintiffs' claim in excess of $13,253.82, defendants say that the same is wrong and unjust because the plaintiffs did not have the quantity of bark on the premises which he alleges, in this action, he sold the defendants, nor has he charged the defendants with the cost price thereof, according to the terms of their contract, but has charged a price greatly in excess thereof, to the amount (with the excess on quantity) of the sum claimed in excess of that offered, and defendant verily believes that by reason of the refusal of plaintiff to convey the bark on the lands which he also contracted to sell, that the defendants have sustained great damage and will be entitled to a further reduction on the sum offered on the trial of this case if the tender be refused."

On March 27, 1893, plaintiff entered a rule for judgment for want of a sufficient affidavit of defence.

On April 21, 1893, defendants filed a supplemental affidavit of defence which was in part as follows :

" It is true that the plaintiff did, on or about the 18th day of August, 1892, enter into an agreement with the defendants as set forth in said contract, copy of which is attached to the plaintiff's statement, and by the terms of said agreement as well as by the distinct understanding between the parties, the plaintiff was to sell to the defendants all the bark upon his lands which he had purchased for use in connection with this tannery, and from which in. part he had been obtaining his supply for said tannery, which said lands are situated in a region contiguous to this tannery, and in the townships of Cumberland Valley, Harrison and Londonderry. The item of all bark was understood to include all bark upon the trees on

the lands aforesaid as well as the bark peeled, and said bark upon the trees is highly necessary to a proper conducting of the business in said tannery, and, without.such understanding between the parties, the defendants would not have paid or agreed to pay the price mentioned in said agreement. That after the making of said contract and the rebuilding of the tannery, which had been destroyed by fire shortly before the sale thereof to defendants, and after defendants had gone into possession of the tannery property and taken the bark then peeled, and when it was desired to close all the details of the contract, the defendants demanded of the plaintiff full performance of his contract by conveying to them the bark on the trees on the lands aforesaid upon payment of the cost price thereof. This the plaintiff refused to do, whereby the defendants have been prevented consummating the contract, although they were anxious, ready and willing to do the same according to the agreement made as aforesaid. This failure on the part of the plaintiff to perform his contract will result in great damage to the defendants, they having built the tannery of its present size in anticipation of obtaining the bark on said lands. That the defendants do not owe the plaintiff on the bark peeled a sum in excess of $13,253.82, and this sum is payable only under the terms of the contract when plaintiff shall convey all the bark on the lands aforesaid, at the cost price thereof, to the defendants, and this the defendants are now ready to do on the conditions aforesaid, and defendants are entitled to an abatement on said sum by way of damages arising from plaintiff's failure to perform his contract as aforesaid, in a sum exceeding two thousand dollars. The defendants have heretofore agreed and do now agree to pay the said sum of $13,253.82 on conveyance to them by the plaintiffs of the bark on the lands aforesaid at the cost price thereof. The defendants deny that the agreement was fully consummated and completed on the first day of September, A. D. 1892, and they deny that plaintiff sold and delivered to the defendants bark amounting in the aggregate to $2502\frac{1695}{2000}$ tons, but defendants aver that from actual measurement of said bark, and from the books of the plaintiff, the true amount does not exceed $1918\frac{462}{2000}$, which at the actual cost price thereof amounts to the sum of $13,253.82, a statement of which was exhibited heretofore to the plaintiff and settlement demanded on the basis thereof."

The prothonotary, at plaintiff's request, entered judgment for $11,000 of the amount which they claimed was admitted to be due. The court subsequently stayed the execution issued on the judgment, and granted a rule to show cause why the judgment should not be stricken from the record. After hearing, the court made the rule absolute, in an opinion by LONGENECKER, P. J., on the ground that the act of May 31, 1893, P. L. 185, applied only in cases where a certain part of plaintiff's claim was clear of all dispute.

*Errors assigned* were (1) stay of execution; (2) opening judgment; (3) in not sustaining judgment entered; quoting orders.

*John H. Jordan*, for appellants.—In giving the construction of the act of 1893, the court will endeavor to carry out its purpose, and so decide that the object of the act shall not be defeated, either by a technical objection, or adroit wording of an affidavit by skillful counsel: Coburn v. Reynolds, 14 Pa. C. C. R. 158; Roberts v. Sharp, 3 Dist. R. 136 [affirmed 161 Pa. 185]; Calkins v. Keely, 3 Dist. R. 339; Ashman v. Weigley, 148 Pa. 63.

Defendants contend that this act does not apply to this case, because the affidavit of defence was filed prior to its passage. But this court has decided otherwise: Hepburn v. Curtis, 7 Watts, 301.

This contract could not be varied by parol evidence: R. R. v. Swank, 105 Pa. 555; Halberstadt v. Bannan, 149 Pa. 51; Woodcock v. Robinson, 148 Pa. 503.

The contract was not an entire contract: Lucesco Oil Co. v. Brewer, 66 Pa. 354.

In Morgan v. McKee, 77 Pa. 231, this court held that, where the contract was, in its very nature, severable, "no understanding or agreement of the parties could render it entire, so long as its provisions remained unchanged."

*John M. Reynolds*, for appellees.—Under the rule for judgment this proceeding was unwarranted. The rule for judgment was either pending or there was an adjudication by the court under it at the time plaintiff requested the prothonotary

to enter judgment under the act of 1893. If the former, then plaintiff had no right to ignore that rule which defendants had answered by their full and complete affidavit filed April 21, 1893.

There was no admission that plaintiff was entitled to a judgment or that defendants owed on this contract, as plaintiff was seeking to enforce it, either $13,253.82, or $11,000, or any other specified sum.

The judgment is not sustained by the act of May 31, 1893 : Reilly et al. v. Daly, 159 Pa. 605; Myers v. Cockran, 3 Dist. R. 135.

The contract for sale of all bark including that on the trees was entire : Rugg & Bryan v. Moore, 110 Pa. 240; Lucesco Oil Co. v. Brewer, 66 Pa. 354; Gill v. Lumber Co., 151 Pa. 534; Quigley v. De Haas, 82 Pa. 273; 1 Benj. on Sales, p. 74; Alcott v. Hugus, 105 Pa. 350 ; 3 A. & E. Ency. L. 916.

OPINION BY MR. JUSTICE GREEN, May 21, 1894 :

In the original affidavit of defence the defendants averred that they had a just and full defence for the whole of the plaintiffs' claim, " except the sum of $13,253.82, for which they tender judgment to the plaintiff in this action." In the supplemental affidavit the defendants allege that they " do not owe the plaintiffs on the bark peeled a sum in excess of $13,253.82, and this sum is payable only under the terms of the contract when plaintiffs shall convey all the bark on the lands aforesaid, at the cost price thereof, to the defendant, and this the defendants are now ready to do on the conditions aforesaid, and defendants are entitled to an abatement on said sum by way of damages arising from plaintiffs' failure to perform his contract as aforesaid, in a sum exceeding two thousand dollars. The defendants have heretofore agreed and do now agree to pay the said sum of $13,253.82 on conveyance to them by the plaintiffs of the bark on the lands aforesaid at the cost price thereof."

It will be seen that in both the affidavits the defendants admit that they owe the plaintiffs the distinct sum of $13,253.82 for bark delivered under the contract, and only claim to set off a sum exceeding two thousand dollars as damages for the non-conveyance by the plaintiff, Samuel Baugh, to them of all the bark on the plaintiffs' other lands than the twelve acres which

he sold them. In support of the supplemental affidavit they contend that the expression in the contract, " all bark is to be sold to the party of the second part at the cost price thereof," means all the bark on all the other lands of the vendor in the neighborhood of the tannery and the twelve acres sold to the defendants. The contract between these parties is in writing and under seal. It contains no provision in reference to any other land than the piece sold. There is no stipulation in it for the sale of any bark on any lands other than the piece sold, and the bark on that piece which was still on the trees would necessarily pass with the fee simple of the land.

Moreover a sale of bark " at the cost price thereof," implies that a *cost price* had already been incurred, and therefore the only bark to which such an expression could be applicable would be bark which had already been peeled. We can readily understand how there would naturally be a quantity of bark on a tannery property at all times, and as the purchaser of the property would necessarily require the bark for use in his tanning operations he would need some stipulation as to its price in his contract of purchase. We see no occasion for extending, by construction merely, this natural and proper meaning of the contract in this case so as to embrace bark on other lands to which no reference whatever is made in the contract, and which had never been peeled. The affidavits of defence contain no averments which would suffice even to raise a question as to any alteration or change in the written terms of the contract. No allegation of fraud, accident or mistake, in its preparation or execution, is made, and without such allegations there is no question to be submitted to a jury touching the terms of the contract. These are in writing and must be interpreted exclusively by the court. Upon the reading of the contract we are clearly of opinion that it must be adjudged by its own expressed terms, and also that these do not include any other bark than such as had already been peeled and was then on the premises sold. It is not by any means sufficient for one party to a contract to aver that it was *understood* to embrace matters which are not expressed in its language. The rule which permits written contracts to be changed by parol is far more strict than any such loose method of impeachment would imply. The conditions upon which such changes may be made have been

frequently expressed, and carefully defined, by decisions of this court. It is sufficient to say that in the present case not one of them appears in either affidavit. We consider that upon these affidavits of defence the plaintiffs were entitled to have judgment entered in their favor for the full sum admitted to be due, to wit, $13,253.82, and when they entered judgment for only $11,000 they were clearly within their legal right. It follows that the learned court below was in error in striking off the judgment entered in favor of the plaintiffs and in staying the execution issued thereunder.

The order of the court below is reversed, and the judgment for eleven thousand dollars entered in favor of the plaintiffs and the execution issued thereon are reinstated at the cost of the appellees, and the record is remitted for further proceedings.